UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARD MURO,<br><br>      Plaintiff,<br><br>  - *against* -<br><br>UBS FINANCIAL SERVICES INC.<br><br>      Defendant. | Case No. 07-CV-6492 (LAP)<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Gerard Muro, for his claims against defendant, UBS Financial Services Inc., respectfully states and alleges as follows:

## THE PARTIES

1. Plaintiff, Gerard Muro, is a citizen of the State of New York, residing at 41 Harbor Hill Drive, Lloyd Harbor, New York 11743-1030.

2. Defendant, UBS Financial Services Inc. ("UBS") is, upon information and belief, a Delaware corporation with its principal place of business located at 1200 Harbor Boulevard, Weehawken, New Jersey 07086-6791.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C.§ 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3), and pursuant to the consent of the parties.

5. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 4 above, as if fully set forth herein.

6. In about August 1999, Plaintiff maintained three brokerage accounts with Merrill Lynch Pierce Fenner & Smith Incorporated ("Merrill Lynch"), a securities brokerage firm. Scott Grenert was the account manager on plaintiff's Merrill Lynch accounts.

7. Upon information and belief, in or about August 1999 Grenert left the employ of Merrill Lynch and joined defendant, UBS, another securities brokerage firm, as a Senior-Vice President of Investment, and thus became a registered representative of UBS.

8. Beginning shortly after his move to UBS, Grenert solicited Plaintiff to move his investment accounts from Merrill Lynch to UBS.

9. Before agreeing to move his accounts to defendant UBS, Plaintiff had several discussions with Grenert concerning the appropriate investment strategies for Plaintiff's future. Plaintiff was extremely concerned that he was nearing retirement age and suffering from recent disability from a serious automobile accident, while holding a portfolio that was overly-concentrated in technology stocks and funds, and insufficiently diversified to provide him security in his retirement years.

10. Grenert agreed that Plaintiff's portfolio was overly concentrated in technology issues and similarly risky issues and agreed that the portfolio required diversification.

11.     Grenert also agreed to provide Plaintiff with a timely and appropriate written plan to diversify his portfolio and agreed to limit commission on any technology stocks sold during diversification.

12.     Grenert further told Plaintiff that as soon as Plaintiff signed the forms required to transfer his securities into defendant, UBS, Grenert would then immediately be able to enact transactions in the new account(s), even though the actual transfer "might take a few days."

13.     On or about February 8, 2000 Plaintiff executed and forwarded to Grenert the forms supplied by Grenert for the transfer of his securities from Merrill Lynch to defendant, UBS. At the time Plaintiff authorized and directed the transfer, the market value of the securities in his Merrill Lynch accounts was approximately $679,464.

14.     Despite Plaintiff's execution of the account transfer forms in early February 2000, the securities in his accounts at Merrill Lynch were not transferred into defendant, UBS, until a time period beginning April 15, 2000 and ending June 30, 2000.

15.     Upon information and belief, during March 2000, the value of the securities held in the Merrill Lynch accounts was as high as approximately $750,000. By the end of March 2000, the value of the securities held in the Merrill Lynch accounts stood at $716,211. However, plaintiff was dissuaded from trading or liquidating his holdings so as to take advantage of these increases because he was informed by Grenert that UBS would take care of the transfer and that it was not necessary for plaintiff to have any contact with his Merrill Lynch broker if that was awkward or uncomfortable, and that the account would be transferred within a few days and at that time plaintiff would be able to begin to sell off the risky technology issues and begin to more appropriately

3

balance the holdings in the portfolio considering plaintiff's personal circumstances. When plaintiff had not received any acknowledgment of the transfer to UBS or the investment plan that Grenert had promised after about a week subsequent to his sending the transfer forms, plaintiff called Grenert to inquire as to the status of the transfer. Grenert said that he would look into the matter and get back to plaintiff. Grenert did not in fact call plaintiff back and after approximately two weeks, plaintiff again called Grenert to inquire as to the status of the accounts and the promised investment plan. Grenert then told plaintiff that there must have been a "glitch" because not all the holdings had been transferred and that he would get back to plaintiff. At that time, after plaintiff inquired about selling the risky securities, Grenert also told plaintiff that while it would be possible to trade in the interim, it would not be desirable to liquidate any of his holdings until all the transfers were completed. In fact, upon information and belief, at the time of those conversations with Grenert, UBS had not even initiated the account transfers, a fact of which plaintiff was then not aware.

16. The value of the securities belatedly transferred into the UBS accounts from Merrill Lynch was $572,245.

17. After the transfer of plaintiff's accounts to UBS, Grenert made numerous unsuitable recommendations for the purchase of additional risky technology issues, and made unsuitable recommendations to continue to hold certain of the excessively risky technology issues that were transferred into UBS, rather than liquidating those holdings.

FIRST CLAIM FOR RELIEF
(Failure to Execute-Breach of Contract)

18. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 17 above, as if fully set forth herein.

19. Upon information and belief, Plaintiff's securities were not timely transferred from the Merrill Lynch accounts into the UBS accounts because UBS did not timely process and administer the account transfer request and forms.

20. Upon information and belief, as a result of the delay in transferring Plaintiff's securities from the Merrill Lynch accounts to the UBS accounts and Grenert's misleading explanations of the status of the transfers, Plaintiff's securities were effectively kept in a state of limbo while the value of the securities decreased precipitously.

21. Upon information and belief, the foregoing activities which occurred with respect to Plaintiff's accounts while they were maintained and improperly administered at UBS constitute breaches of internal standards of conduct owing by UBS to the Plaintiff, which are stated in UBS' own policy and procedures manuals or such other internal documents of UBS as exist and apply in the circumstances.

22. The foregoing wrongful activities, which occurred with respect to the Plaintiff's accounts while maintained and improperly administered at UBS constitute breaches of contractual duties owing by UBS to the Plaintiff, including, without limitation, the contractual duties of good faith and fair dealing with the Plaintiff, and the contractual duties set forth in the customer agreements which specifically incorporate the applicable rules, regulations, usages and customs of the applicable exchanges, market or clearing houses that have been violated by UBS.

23. By reason of the foregoing acts and omissions by UBS, Plaintiff has been damaged in an amount to be proven upon the hearing of this proceeding, but that in any event is not less than $175,000.

## SECOND CLAIM FOR RELIEF
(Unsuitability-Breach of Contract)

24.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 23 above, as if fully set forth herein.

25.     Despite his promises, made on behalf of UBS, Grenert failed to provide Plaintiff with a timely and appropriate written plan to diversify his portfolio.

26.     Despite the promises made by Grenert on behalf of UBS, to advise and assist Plaintiff in obtaining and maintaining an appropriate mix of securities in his portfolio taking into account his financial situation and needs, Grenert and UBS failed to properly so advise or assist Plaintiff, with the result that his portfolio remained overly concentrated in securities that were not appropriate or suitable for his investment profile.

27.     Despite the promises made by Grenert on behalf of respondent UBS to advise and assist Plaintiff in obtaining and maintaining an appropriate mix of securities in his portfolio taking into account his age, imminent retirement and investment objectives, Grenert and UBS in fact recommended additional purchases of risky technology securities that were unsuitable for and inconsistent with those objectives, and recommended that plaintiff continue to hold additional securities that were unsuitable for his investment objectives.

28.     Plaintiff reasonably relied on the aforesaid recommendations in purchasing and holding the unsuitable securities.

29.     Upon information and belief, the pattern of unsuitable trading and holding as recommended by Grenert and UBS, and the failure to properly advise and assist Plaintiff with respect to the diversification of the account, violated the "know your customer" and suitability requirements which were applicable to the UBS accounts under

6

the laws, rules, regulations and standards of conduct in the securities industry, and those at UBS, and which are deemed incorporated into the agreement between Plaintiff and UBS.

30. Upon information and belief, the foregoing activities which occurred with respect to Plaintiff's accounts while they were maintained and improperly administered at UBS constitute breaches of internal standards of conduct owing by the UBS to the Plaintiff, which are stated in UBS' own policy and procedures manuals or such other internal documents of UBS , as exist and apply in the circumstances.

31. Upon information and belief, the foregoing wrongful activities, which occurred with respect to the Plaintiff's accounts while maintained and improperly administered at UBS, constitute breaches of contractual duties owing by UBS to the Plaintiff, including, without limitation, the contractual duties of good faith and fair dealing with the Plaintiff, and the contractual duties set forth in the customer agreements which specifically incorporate the applicable rules, regulations, usages and customs of the applicable exchanges, market or clearing houses that have been violated by UBS.

32. By reason of the foregoing acts and omissions of UBS, Plaintiff has been damaged in an amount to be proven upon the hearing of this matter, but that in any event is not less than $318,308.

THIRD CLAIM FOR RELIEF
(Breach of Fiduciary Duties)

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 32 above, as if fully set forth herein.

34. UBS owed Plaintiff certain fiduciary duties, including variously the duty to use care, and to properly supervise Grenert and the activity in Plaintiff's accounts.

35. The foregoing wrongful acts and omissions, which occurred with respect to the Plaintiff's accounts while maintained and improperly administered at UBS, constitute breaches of fiduciary duties due and owing to Plaintiff by UBS, who was in a position of trust with respect to the Plaintiff.

36. By reason of the foregoing, Plaintiff has been damaged in an amount to be proven upon the hearing in this proceeding, but that in any event is not less than approximately $493,308.

## FOURTH CLAIM FOR RELIEF
(Breach of Supervisory Duties and Responsibilities)

37. Plaintiff repeats and realleges the allegation contained in paragraphs 1 through 36 above, as if fully set forth herein.

38. The foregoing wrongful acts and omissions, which occurred with respect to the Plaintiff's accounts while maintained and improperly administered at UBS were the subject of supervisory duties and responsibilities of UBS.

39. UBS had affirmative duties to supervise its registered agent and to periodically inspect the Plaintiff's accounts for evidence of, and to reasonably prevent, undue delay in transferring the accounts from Merrill Lynch to UBS. UBS had affirmative duties to supervise its registered agent and to periodically inspect the Plaintiff's accounts for evidence of, and to reasonably prevent, unsuitable investments. Instead of properly supervising Grenert and properly advising Plaintiff, UBS sought to induce the Plaintiff to ratify Grenert's conduct by failing to discuss concerns UBS had or should have had with regard to such conduct, and, instead, purposefully supported Grenert and actively encouraged and supported the continuance of the pattern of such improper conduct, instead of properly supervising and curtailing it.

40.     Upon information and belief UBS failed with regard to its record keeping, supervisory duties and responsibilities over the Plaintiff's accounts, and are, accordingly, liable for the improper activity and improper administration that occurred while Plaintiff's accounts were maintained at UBS, as a result of the acts and omission stated herein.

41.     As a direct and proximate result of UBS's wrongful course of improper conduct and failure to supervise, Plaintiff has sustained damages in an amount to be proven upon the hearing of this proceeding, but in any event not less than approximately $493,308.

## JURY TRIAL DEMAND

42.     Plaintiff demands trial by jury of all issues so triable.

WHEREFORE, plaintiff respectfully requests judgment as follows:

   A. On the First Claim for Relief, an award in favor of Plaintiff and against UBS in such amount as may be proven upon the hearing, but in any event not less than $175,000;

   B. On the Second Claim for Relief, an award in favor of Plaintiff and against UBS, in such amount as may be proven upon the hearing, but in any event not less than $318,308;

   C. On the Third Claim for Relief, an award in favor of Plaintiff and against UBS in such amount as proven upon the hearing, but in any event not less than $493,308;

D. On the Fourth Claim for Relief, an award in favor of Plaintiff and against UBS in such amount as proven upon the hearing, but in any event not less than $493,308;

together with the costs of this action and such other and further relief as the Court may deem just and proper in the premises.

Dated: New York, New York
July 17, 2007

LAW OFFICES OF DAN BRECHER
Attorneys for Plaintiff

By: _____
Dan Brecher (DB5308)
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 286-0747