UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARD MURO,<br><br>　　　　　　　　　Plaintiff,<br><br>　- *against* -<br><br>UBS FINANCIAL SERVICES INC.<br><br>　　　　　　　　　Defendant. | Case No. 07-CV-6492 (LAP) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Gerard Muro, respectfully submits this memorandum in opposition to the motion of defendant, UBS Financial Services, Inc. ("UBS") to dismiss the Complaint. Relevant facts are set forth in the accompanying affidavit of Edward F. Westfield ("Westfield Affidavit")

PRELIMINARY STATEMENT

The attempt by UBS to characterize the claims as governed by three-year statutes of limitations is wrong on both the facts and the law. The claim that the action is untimely based on the dismissal of a prior arbitration proceeding, is also incorrect: defendant specifically agreed that the commencement of the arbitration proceeding tolled any statute of limitation, and also specifically agreed to the commencement of this action within 90 days after dismissal of the arbitration proceeding. The motion to dismiss should be denied in its entirety.

ARGUMENT

I

THE CLAIMS ARE GOVERNED BY THE SIX-YEAR
STATUTE OF LIMITATIONS OF CPLR § 213

**A.     The Complaint Adequately Alleges the Existence of a Contract**

Defendant's argument that the Complaint fails to plead the existence of a contract between plaintiff and UBS, simply ignores the plain words of the pleading. However, UBS no doubt felt compelled to take this position because if it concedes the existence of a contract, its other arguments dissolve.

It is hornbook law that a customer may sue his stockbroker for many different types of wrongs that may arise from a breach of contract:

> A broker's mishandling of a customer's account may be the basis of a suit for breach of contract. . . . .
>
> The contract upon which such a claim is based may be a written margin agreement between the broker and the customer, or it may be an express or implied oral agreement . . . .
>
> The alleged breach of contract may consist, simply, of the broker's mismanagement of the customer's account, on the premise that the contract included an implied agreement that the account would be handled properly. Or the plaintiff may describe the alleged breach more specifically: for example, as a failure by the brokerage firm to fulfill its common law and statutory duties to handle its customer's account with due care and diligence, to supervise its employees adequately, [or] to ensure that its employees acted in the customer's best interest and in good faith toward the customer . . . .

Poser, *Broker-Dealer Law and Regulation* § 2.5.4 at 197-98. Here, plaintiff's claims arise from the contractual relationship between plaintiff and UBS, and are therefore governed by the six-year statute of limitations for actions on contracts, section 213 of the New York Civil Practice Law and Rules.

Plaintiff specifically pleads the existence of a contract in paragraphs 12 and 13 of the Complaint, where he alleges (a) that the UBS broker, Scott Grenert ("Grenert"), told him that as soon as plaintiff signed the forms required to transfer his securities into UBS, Grenert would then immediately be able to enact transactions in the new accounts, and (b) that "[o]n or about February 8, 2000 Plaintiff executed and forwarded to Grenert the forms supplied by Grenert for the transfer of his securities from Merrill Lynch to defendant, UBS." The argument that the Complaint alleges "that UBS did not . . . accept [plaintiff's] offer to open an account," misreads the Complaint: it clearly alleges that plaintiff accepted UBS' offer, through Grenert, to open an account with UBS by completing and mailing the account transfer forms, which were accepted by UBS. In fact, the three account applications that plaintiff alleges he signed and forwarded on about February 8, 2000, each referencing and incorporating a Master Account Agreement, were countersigned and accepted by defendant's representatives, who did not date their acceptances. *See* Westfield Aff't Ex.B. On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a court may review documents integral to the complaint upon which the plaintiff relied in drafting the pleadings, as well as 'any written instrument attached to it as an exhibit or incorporated in it by reference.'" *Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 (S.D.N.Y. 2006) (quoting *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000)). The court must accept all well-pleaded factual assertions in the complaint, as true and draw all reasonable inferences in favor of the plaintiff. *See Jaghory v. New York State Department of Education*, 131 F.3d 326, 329 (2d Cir. 1997). Plaintiff here has adequately alleged the existence of a contractual relationship in February 2000.

The First Claim for Relief further asserts that Grenert told plaintiff that he would take care of the transfer and that it was unnecessary for Plaintiff to have any contact with his Merrill Lynch broker; that the account would be transferred within a few days and at that time plaintiff would be able to begin to sell off risky technology issues; that despite plaintiff's execution of the account transfer forms in early February 2000, the securities in his Merrill Lynch accounts to UBS were not even begun to be transferred into UBS until April 15, 2000; and that the value of his securities declined precipitously during the period of delay. *See* Complaint ¶¶ 15-16.

Clearly, this claim sounds in breach of contract, which is governed by a six-year statute of limitations of CPLR § 213. A contract claim against a broker may be based on a written agreement between the broker and customer, or an express or implied oral agreement, *see* Poser, *Broker-Dealer Law and Regulation: Private Rights of Action* § 2.5.4 at 198. In New York, such claims are governed by the six-year statute of limitations, *see Klock v. Lehman Brothers Kuhn Loeb Inc.*, 284 F. Supp. 210, 223 (S.D.N.Y. 1984). Here, the arbitration proceedings referenced in the Westfield Affidavit (the "Arbitration") was filed within six years of the commencement of the parties' contractual relationship, and the claim for breach of contract is timely.

B. **The Complaint States a Timely Claim for Breach of Fiduciary Duty**

The Court should reject UBS' argument that it owed no fiduciary duties to Plaintiff. In New York, the relationship between a broker and customer is that of agent and principal, *see Gilman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 93 Misc. 2d 941, 944, 404 N.Y.S.2d 258, 262 (Sup. Ct. N.Y. Co. 1978). An agency relationship is contractual in nature and may be created, as here, by express agreement. *See* 2A N.Y. Jur.

4

2d Agency § 20. Once UBS assumed the role of agent, it had the duty of a fiduciary to perform reasonably with due diligence. *See Fisk Building Assocs. v. Continental American Ins. Co. of Delaware*, 80 Misc. 2d 56, 58, 362 N.Y.S.2d 315, 319 (Civ. Ct. N.Y. Co. 1974).

The Second Circuit has expressly held that in New York, "'[t]he relationship between a stockbroker and its customer is that of principal and agent and is fiduciary in nature,'" *Press v. Chemical Investment Services, Inc.*, 166 F.3d 529, 536 (2d Cir. 1999) (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 510 (2d Cir.1994)). "'[T]he fiduciary obligation that arises between a broker and a customer as a matter of New York common law is limited to matters relevant to affairs entrusted to the broker.'" *Press v. Chemical Investment Services, Inc.*, 166 F.3d at 536 (quoting *Rush v. Oppenheimer & Co.,* 681 F. Supp. 1045, 1055 (S.D.N.Y.1988)). *Cf. Rozsa v. May Davis Group, Inc.*, 152 F. Supp. 2d 526, 531-32 (clearing broker, unlike introducing broker, generally has no fiduciary duty to individual investor). The Complaint alleges, among other things, UBS' failure to use due care in transferring Plaintiff's securities from Merrill Lynch into UBS, a task that was specifically "entrusted to the broker." Thus the Complaint sufficiently alleges that a fiduciary relationship was established between the parties, and breached by UBS.

The Court should also reject the argument that the claim for breach of fiduciary duty was untimely. Because the claim for breach of fiduciary duties arises out of the parties' contractual relationship, it is governed by the six-year statute of limitations of section 213 of the Civil Practice Law and Rules. "A six-year statute of limitations applies to a breach of a fiduciary duty claim which originates from a contractual relationship." *Healey v. Pyle*, 1992 WL 80775 at * 2 (S.D.N.Y.). *See Frank Management, Inc. v.*

5

*Weber*, 145 Misc. 2d 995, 549 N.Y.S.2d 317, 318-20 (Sup. Ct. N.Y. Co. 1989) (six-year limitations period applicable to contract actions, rather than three-year period applicable to tort claims, governed claim for breach of fiduciary duty, which "had its genesis in a contractual relationship, express or implied, between the parties."); *Butler v. Gibbons*, 173 A.D.2d 352, 569 N.Y.S.2d 722, 723 (1st Dep't 1991) (six-year contractual statute of limitations applied to claim alleging breach of fiduciary duty created by joint venture).

In *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907 (S.D.N.Y. 1997), the Court held that a claim for money damages for breach of fiduciary duty that has its genesis in the contractual relationship of the parties, is subject to the six-year limitations period, because plaintiff sought damages to its pecuniary interests identical to those which would be recoverable on a contract claim. *Id.* at 915-16. Because the appropriate limitations period does not depend upon the theory pursued, but rather upon the remedy sought, *see Santulli v. Englert, Reilly & McHugh, P.C.*, 78 N.Y.2d 700, 708, 579 N.Y.S.2d 324, 327-28 (1992), the six-year statute should be applied on the claim for damages for breach of fiduciary duty.

Under New York law, the six-year limitations period for contract claims runs from the date of the breach, *see Frank Management, Inc. v. Weber*, 549 N.Y.S.2d at 318-20. Because all these claims are grounded in contract and Plaintiff commenced the Arbitration within six years after they accrued, the claims are timely and the motion to dismiss should be denied.

C. **The Claim for Failure to Supervise is Adequately Pleaded and Timely**

The Fourth Claim for Relief properly alleges that UBS breached its affirmative duties to supervise Grenert and to prevent the undue delay in transferring Plaintiff's

6

accounts from Merrill Lynch to UBS. Contrary to defendant's argument, this claim sounds in breach of contract and is subject to the six-year statute of limitations.

The specifics of the agency relationship between a stockbroker and customer will be determined by their employment contract, in which the parties may adopt trade usage and custom as part of their agreement, *see* 5 Williston, Contracts (1961) 32-34, Section 651. In that regard, all confirmations of transactions in Claimant's accounts bore the following legend on the reverse side:

> **Regulations:** These transactions are subject to the rules, regulations and customs of the exchange or market on which they are made and to any and all applicable federal, state and/or foreign statutes or regulations.

Westfield Aff't ¶ 8. Thus, the exchange rules, including the supervision rules (NYSE Rule 401 and NASD Rule 3010), are deemed incorporated into the agreement between customer and broker. Accordingly, courts in New York and elsewhere have held that conduct by brokers in violation of stock exchange rules is subject to state common law contract rules, and can be remedied in a suit for breach of contract. *See Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 465 F. Supp 1233, 236 (S.D.N.Y. 1979); *Thomson McKinnon Securities Inc. v. Clark*, 901 F.2d 1568, 1570 (11th Cir. 1990); *Brumm v. McDonald & Co. Securities, Inc.*, 78 Ohio App. 3d 96, 603 N.E.2d 1141, 1147 (Ohio Ct. App. 1992).

UBS' reliance on *Coleman & Co. Securities Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288 (S.D.N.Y. 2002), is misplaced. In that case, the claim was expressly premised upon common-law negligence, and thus subject to the three-year limitations period. Significantly, the court there noted: "This ruling will not, however, preclude respondents from asserting other claims, such as breach of contract, that are based upon a

negligence theory, such as a failure to meet a contractual obligation because of negligent conduct." *Id.* at 303. That is exactly the case here, and the motion to dismiss the claim for failure to supervise should be denied.

### D. Plaintiff's Unsuitability Claim Was Timely Filed.

Defendant mischaracterizes plaintiff's claim for unsuitability as a fraud claim under the federal securities laws, when in fact it is grounded in contract under state law. Unsuitable investment recommendations may provide the predicate for common law causes of action under New York law, *see Mauersberg v. E.F. Hutton & Co., Inc.*, 116 A.D.2d 417, 419-20, 501 N.Y.S.2d 748, 750 (3d Dep't 1986). As with the claim for UBS' failure to supervise, the applicable exchange rules, including NYSE Rule 405 and NASD Rule 2310, were incorporated into the brokerage agreement, and the violation of those rules gives rise to the claim for breach of contract. *See Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 465 F. Supp. at 1236; *Thomson McKinnon Securities Inc. v. Clark*, 901 F.2d at 1570; *Brumm v. McDonald & Co. Securities, Inc.*, 603 N.E.2d at 1147. Because plaintiff is not alleging fraud, the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure do not apply to this claim. *See Gross v. New Balance Athletic Shoe, Inc.* 944 F. Supp. 242, 244 (S.D.N.Y. 1997) (complaint alleging antitrust violations is not subject to special pleading requirements of Rule 9). The Complaint here provides sufficient notice of the claim, and was filed within the six-year limitations period for breach of contract. The motion to dismiss the second claim for relief should be denied.

II

THIS ACTION IS TIMELY;
PLAINTIFF CONSENTED TO ITS
COMMENCEMENT WITHIN 90 DAYS AFTER
DISMISSAL OF THE ARBITRATION

The argument by UBS that the pendency of the Arbitration did not automatically toll the applicable statutes of limitation, is diametrically opposed to the position forcefully espoused by UBS in moving for dismissal of the Arbitration. At the hearing of the Arbitration, UBS' counsel, Jon S. Kaplan, Esq., made a motion to dismiss the Arbitration under former NASD Code of Arbitration Rule 10305(a), which provides as follows:

> At any time during the course of arbitration, the arbitrators may, either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party.

In support of his motion to dismiss, Attorney Kaplan made the following argument, among others, to the Arbitration Panel:

> Under Rule 10305, the arbitration code reads at any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies. It's without prejudice. *It means this claimant can go to court, bring this case, his statute of limitations arguments to the extent they're valid, would be just as valid in court because the filing of this action tolls any statute of limitation. Therefore, if February 6th, 2006 was early enough to bring this action then, it would still be good in court.*

Moving Declaration of Julian Wells, Esq. ("Wells Dec."), Ex. C, Transcript of Arbitration Proceedings on April 1, 2007, at 8-9 (emphasis added). While the Arbitration

9

Panel was deliberating that motion, the parties reached an agreement to dismiss the Arbitration pursuant to former Rule 10305(a), with certain additional conditions, including the following condition recited into the record by UBS' attorney:

> MR. KAPLAN: The dismissal as against UBS Financial Services is without prejudice, and that brings us to point four, which is that any court action brought by Muro against UBS must be commenced within 90 days of April 19, 2007. The exclusive jurisdiction of that action, if it is brought, shall be the Southern District of New York, Federal Court, located in the Southern District of New York. In that action, if it is brought, UBS does not waive any defense based upon the statute of limitations or any other defense *that was raised in this action.*
> After the expiration of 90 days from April 19, 2007, if no action has been commenced in the Southern District of New York as set forth herein, all claims against UBS by Mr. Muro, are dismissed with prejudice.

Wells Dec., Ex. B at 18, ll. 6-24 (emphasis added).

UBS' agreement on the record of the Arbitration to extend the statute of limitations is valid and enforceable. In *In re Cohoes Industrial Terminal, Inc.*, 78 B.R. 681, 694 (Bky. S.D.N.Y. 1981), the bankruptcy court found that a lessee's agreement to extend its lessor's time to object to cash flow statements and still bring a claim for contingent rent, operated to extend and renew the statute of limitations. The court found that such an extension of the limitations period was authorized by section 17-103(1) of the New York General Obligations Law, which provides in relevant part:

> A promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law, if made after the accrual of the cause of action and made, either with or without consideration, in a writing signed by the promisor or his agent is effective, according to its terms, to prevent interposition of the defense of the statute of limitation in an action or proceeding commenced within the time that would be applicable if the cause of action had arisen at the

10

> date of the promise, or within such shorter time as may be provided in the promise.

New York law allows agreements to extend the statute of limitations even after the cause of action is time barred so that the running of the statute of limitations may be renewed on the cause of action covered by the agreement. *See Lifset v. Western Pile Co.*, 85 A.D.2d 855, 446 N.Y.S.2d 487 (3d Dep't 1981).

Here, the on-the-record agreement of UBS at the Arbitration extended the time for filing this federal action for 90 days after April 19, 2007. To the extent UBS may be found to have preserved any defense of limitations, it was limited to the "Fifteenth Defense" that was "raised in" the arbitration proceedings, specifically that the Arbitration itself was not timely commenced. *See* Westfield Affidavit Ex. A at 16. Because there has been no showing that the Arbitration was not timely filed within the six-year limitations period, the motion to dismiss should be denied.

Moreover, UBS' should be estopped from now asserting that the filing of the Arbitration did not toll the statute of limitations, contrary to the representation it made on the record. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.2d 793, 794, 793 N.Y.S.2d 565 (3d Dep't 2005)). Here, in agreeing to dismissal of the Arbitration and referral to this Court for his remedies, plaintiff relied on the representation and agreement by UBS' attorney that the filing of the Arbitration tolled any statute of limitations. *See* Westfield Affidavit ¶ 7. UBS should not now be permitted to change positions to plaintiff's detriment. The motion to dismiss should be denied.

III

THE CLAIMANT SHOULD BE ALLOWED
TO REMEDY TECHENICAL DEFECTS
IN THE COMPLAINT, IF ANY

To the extent this Court finds a pleading deficiency in the Complaint; plaintiff requests leave to amend the Complaint as to any such technical deficiency.

CONCLUSION

For the above reasons, the motion of defendant, UBS Financial Services, Inc., to dismiss the Complaint should be denied in all respects.

Dated: October 15, 2007

        LAW OFFICES OF DAN BRECHER
        Attorneys for Plaintiff

        By:  /s/ Dan Brecher
            Dan Brecher (DB5308)
        99 Park Avenue, 16th Floor
        New York, NY 10016
        (212) 286-0747